UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIFFANY CHERIE BROWN,

       Plaintiff,                Case No.:

v.

PRADO ENTERPRISES, INC. d/b/a
MCDONALD'S,

       Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, TIFFANY CHERIE BROWN, by and through her undersigned counsel and sues the Defendant, PRADO ENTERPRISES, INC. d/b/a MCDONALD'S (hereinafter referred to as "PRADO" or "Defendant") and states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, TIFFANY CHERIE BROWN, is a resident of Hernando County, Florida.

4. Defendant, PRADO, is a Florida Profit Corporation authorized and doing business in this Judicial District. At all times material, Defendant employed Plaintiff. At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

5. At all times material, Plaintiff was an employee of Defendant within the meaning of the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

6. At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

7. At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

8. Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

9. Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on August 24, 2020.

11. On July 21, 2021, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination. This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

12. Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

**FACTUAL ALLEGATIONS**

13. In or around 2009, Plaintiff began her employment with Defendant.

14. In or around August 2018, Plaintiff transferred to the Defendant's McDonald's location in Bushnell, Florida and worked as a Shift Manager.

15. Starting in or around June or July 2019, Plaintiff's co-worker, Michael Hill, began sexually harassing Plaintiff during nearly every shift that they worked together.

16. Hill's sexually harassing behavior included, but is not limited to:

    (a) Putting his hands on Plaintiff's shoulders to trying and rub them;

(b) Rubbing against Plaintiff with his genitals or hand from behind when Plaintiff was bending over.

(c) If Plaintiff bent over, Hill commented: "oooh, Cherie, that position."

(d) Asking if Plaintiff was tired and, if so, Plaintiff could sit on Hill's lap and "take a break."

(e) Making inappropriate sexual gestures behind Plaintiff's back.

(f) Sending emojis via Facebook with hearts and dogs.

(g) Talking about the type of swimsuit he would wear.

(h) Asking Plaintiff's co-workers if they could show him pictures of Plaintiff in a swimsuit.

(i) Telling Plaintiff that she is beautiful and if Plaintiff was with him, she wouldn't have to worry about anything.

(j) Commenting in Plaintiff's presence that he could go "all night" in bed.

(k) Talking about his sex life and how he was "breaking headboards."

(l) Said about Plaintiff's pregnancy: "that's my baby."

17. By approximately September 2019, the harassment by Hill was escalating, so Plaintiff approached Erika Pagan (Store Manager) and made her first complaint regarding Hill's sexual harassment. Pagan told Plaintiff to "ignore" Hill, stated that Plaintiff "know[s] how Mike is" and that she would speak with Hill.

18. Despite Pagan telling Plaintiff that she would speak with Hill, nothing changed, and his harassment continued.

19. In or around October 2019, Plaintiff learned that she was pregnant.

20. Plaintiff tried to adjust her work schedule to avoid working with Hill, but her requests were often denied.

21. In or around November 2019, Hill's wife began working at the store. Plaintiff hoped that Hill would stop his sexually harassing behavior, but it only stopped when his wife was present. Hill even commented: "I heard both my girls were working together yesterday" when Plaintiff was scheduled on the same shift as his spouse.

22. In or around November 2019, Plaintiff spoke with Jaclyn Somers and Erica Pagan and told them that she could no longer work around Hill because he was acting inappropriately toward Plaintiff. Pagan stated that she was "going to have to get rid of Mike." Somers said "well, that's just Mike." Pagan knew of Hill's behavior but would look the other way.

23. Shortly after Christmas 2019, Plaintiff was returning to work after her legs swelled due to her pregnancy. Plaintiff noticed that Hill was not wearing his hat as required by Defendant's policy, so Plaintiff reminded him to put it on. Mr. Hill aggressively approached Plaintiff, then stood behind Plaintiff and criticized her for not being at work the previous day. At that point, Plaintiff had enough

and told Hill that he needed to stop talking to her if he could not be professional and that Plaintiff would tell his wife what kind of husband she had if his behavior continued. In response, Hill gave Plaintiff the middle finger.

24. On December 30, 2019, Plaintiff sent a text message to Pagan and Somers informing them that Plaintiff arrived at work and Hill was acting childish and unprofessionally toward her. Again, Plaintiff noted the sexually harassing comments and gestures from Hill. Pagan responded and told Plaintiff that she and JC Prada (Supervisor) "will address today."

25. On December 31, 2019, Plaintiff spoke with Pagan and asked if they were ever going to have the meeting regarding Hill. Pagan asked if they could meet on January 3, 2020. Plaintiff agreed, but the meeting never happened.

26. Hill's behavior toward Plaintiff worsened. His behavior became even more physical in nature, bumping into Plaintiff, backing into Plaintiff, and swiping his hand across Plaintiff's buttocks.

27. Therefore, on January 10, 2020, Plaintiff sent JC Prada a text message asking Prada if they could sit down and talk the week of January 17th regarding the situation with Hill. Plaintiff told Prada that she could not continue to work in an environment that constantly made her uncomfortable. Plaintiff further noted that Pagan told her that Pagan and Plaintiff were going to meet on January 3, 2020, but the meeting did not happen.

28. On January 17, 2020, Pagan called Plaintiff into the office and Plaintiff explained what Hill was doing. Plaintiff told Pagan that she understood that he had a family, but Plaintiff did not know how much more of the sexual abuse she could take.

29. After the meeting, Plaintiff's family arrived at work to do the gender reveal of Plaintiff's baby. When Plaintiff came back into the store, Pagan, Hill, and Tanja West Scott (Department Manager) were having a meeting about Plaintiff. Plaintiff heard Pagan talking about the details that Plaintiff shared with her, saying that Plaintiff had a lawyer (she did not), and that Plaintiff's father was there to sit in on the meeting.

30. As a result of this, on January 17, 2020, Plaintiff provided a written statement to Pagan, outlining Hill's sexually harassing behavior; specifically, a January 3, 2020 incident when Hill touched Plaintiff's buttocks. Again, Plaintiff noted her discomfort in the workplace and how Hill's actions were getting out of control.

31. On January 21, 2020, JC Prada met with Plaintiff and stated that Defendant was going to start an investigation and he did not realize the situation with Hill was "that serious." Prada also said that he thought it was "just tit for tat type stuff" and that is why he never bothered to sit down and talk to Plaintiff about it.

32. On January 21, 2020, Plaintiff provided a written statement to JC Prada and Pagan outlining Hill's sexually harassing behavior. In the statement, Plaintiff further noted that there were witnesses who could attest to Hill's behavior and that Plaintiff was not the only employee that Hill acted inappropriately toward.

33. On January 21, 2020, Plaintiff also sent a text message to JC Prada and copied her December 30, 2019 text message that Plaintiff sent to Pagan and Somers and informed Prada that this was the second time that Plaintiff notified Pagan and Somers about Hill's behavior.

34. On January 24, 2020, Plaintiff sent JC Prada a text message inquiring about where things were regarding her situation with Hill. Prada stated that he "discussed it" with Tony Souto (Director of Operations) and that Defendant would open an investigation and would keep Plaintiff updated along the way.

35. That same day (January 24, 2020), Melissa Green (Guest Service Department Manager) and another Shift Manager were treating Plaintiff in a rude and disrespectful manner during her shift. During that same shift, Hill kept pushing tables in Plaintiff's direction until one hit Plaintiff in the stomach (while Plaintiff was pregnant).

36. On January 25, 2020, Souto spoke with Plaintiff and noted that he knew Hill for a "very long time." Souto asked if Plaintiff wanted to transfer to

another store. Plaintiff told Souto that would be out of the way for her, and Plaintiff liked the Bushnell store because it was closer to her home. Additionally, Souto said that he reviewed the surveillance cameras for the second week of January and said that he saw Hill walking toward Plaintiff but did not see him touch Plaintiff.

37. On or about January 25, 2020, Hill was suspended for 2 days for trying to put a broomstick into the buttocks of Plaintiff's co-worker. Hill was told by Souto to take a few days off "with everything that's going on." Thereafter, Hill was granted a transfer to Defendant's McDonald's location at Ridge Manor.

38. In or around early February 2020, after Hill was transferred, Hill returned to Defendant's Bushnell location and came behind the counter, knowing that Plaintiff was there. Hill proceeded to walk past Plaintiff, which made her uncomfortable. Plaintiff reported Hill's behavior to Pagan.

39. On or about February 2, 2020, Green called the store and yelled/cursed at Plaintiff about the store being short staffed and an employee working overtime. Later, Plaintiff met with JC Prada. He asked Plaintiff: "are we ok" and said: "I know we took care of the Michael thing for you, but are we good?" Prada then instructed Plaintiff that she was not to report to work on February 8 and February 9, 2020 because Plaintiff was suspended without pay related to her earlier conversation with Green.

40. Since then, Plaintiff suffered other acts of retaliation by Defendant and intends to file a second Charge of Discrimination with the EEOC.

## COUNT I
## TITLE VII—SEX HARASSMENT
*(As to Defendant Prado Enterprises)*

41. Plaintiff, TIFFANY CHERIE BROWN, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty (40).

42. Plaintiff, a female, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

43. The aforementioned actions by Michael Hill constitute unwelcome sex harassment.

44. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

45. Defendant knew or should have known of the harassment of Plaintiff.

46. The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of Title VII.

47. The sex harassment and conduct of Michael Hill created a hostile work environment which interfered with Plaintiff's ability to perform her job.

48. Defendant's actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

49. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

50. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

    f. Attorneys' fees and costs;

    g. Injunctive relief; and

    h. For any other relief this Court deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT—SEXUAL HARASSMENT
*(As to Defendant Prado Enterprises)*

51. Plaintiff, TIFFANY CHERIE BROWN, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty (40).

52. Plaintiff, a female, is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

53. The aforementioned actions by Michael Hill constitute unwelcome sex harassment.

54. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

55. Defendant knew or should have known of the harassment of Plaintiff.

56. The aforementioned actions created a hostile environment and constitute discrimination on the basis of gender/sex, in violation of the Florida Civil Rights Act.

57. The sex harassment and conduct of Michael Hill created a hostile work environment which interfered with Plaintiff's ability to perform her job.

58. Defendant's actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

59. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

60. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Punitive damages;

    f.    Attorneys' fees and costs;

    g.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

## COUNT III
## TITLE VII – RETALIATION
*(As to Defendant Prado Enterprises)*

61. Plaintiff, TIFFANY CHERIE BROWN, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty (40).

62. Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"). Specifically, Plaintiff opposed sexual harassment, by making good-faith complaints to Defendant.

63. In retaliation for engaging in protected activity, Plaintiff suffered an adverse employment action when she was suspended without pay by Defendant.

64. Stated differently, the adverse employment action suffered by Plaintiff at the hands of Defendant is causally connected to her opposition and resistance of sex harassment.

65. The aforementioned actions by Defendant constitute retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964.

66. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

67. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

    f. Attorneys' fees and costs;

    g. Injunctive relief; and

    h. For any other relief this Court deems just and equitable.

**COUNT IV**

## **FLORIDA CIVIL RIGHTS ACT—RETALIATION**
*(As to Defendant Prado Enterprises)*

68. Plaintiff, TIFFANY CHERIE BROWN, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty (40).

69. Plaintiff engaged in protected activity by opposing an employment practice made unlawful by the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"). Specifically, Plaintiff opposed sexual harassment by making good-faith complaints to Defendant.

70. In retaliation for engaging in protected activity, Plaintiff suffered an adverse employment action when she was suspended without pay by Defendant.

71. Stated differently, the adverse employment action suffered by Plaintiff at the hands of Defendant is causally connected to her opposition and resistance of sex harassment.

72. The aforementioned actions by Defendant constitute retaliation by Defendant in violation of the Florida Civil Rights Act.

73. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

74. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a. Back pay and benefits;

b. Prejudgment interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e. Punitive damages;

f. Attorneys' fees and costs;

g. Injunctive relief; and

h. For any other relief this Court deems just and equitable.

## COUNT V
## NEGLIGENT SUPERVISION/NEGLIGENT RETENTION
*(As to Defendant Prado Enterprises)*

75. Plaintiff, TIFFANY CHERIE BROWN, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty (40).

76. Defendant knew, or in the exercise of reasonable care, should have known during Michael Hill's course of employment with Defendant of problems with Hill that indicated his unfitness and/or unsuitability as an employee, agent and/or servant of Defendant.

77. Such problems included but are not limited to: prior employee complaints about Hill for inappropriate physical behavior and inappropriate

physical sexual behavior.

78. Defendant negligently failed to take further action such as investigating, discharging, or reassigning Hill during the course of his employment, agency and/or service with Defendant.

79. Defendant owed a duty to Plaintiff to exercise reasonable care in retaining competent, reliable and safe employees who Defendant knew or should have known would be suitable to supervise, associate with and work alongside its employees.

80. Defendant breached its duty to Plaintiff and others similarly situated to exercise reasonable care in retaining competent, reliable and safe persons by failing to exercise reasonable care in retaining Hill, by failing to institute and/or enforce policies and/or procedures to properly investigate his background when it knew, or in the exercise of reasonable care, should have known, he would be unsuitable to supervise, associate with and work alongside its employees.

81. It was reasonably foreseeable to Defendant that its negligence in retaining Hill would pose a danger to persons such as Plaintiff and others similarly situated.

82. As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered damages, including, but not limited to:

    a. Pain, suffering, anguish, and severe emotional distress;

  b. Embarrassment;

  c. Humiliation;

  d. Loss of capacity for the enjoyment of life;

  e. Inconvenience;

  f. Loss of employment opportunities;

  g. Loss or diminution of income and employment benefits;

  h. Loss of dignity;

  i. Damage to reputation; and

  j. other non-pecuniary losses for which compensatory damages should be awarded.

## COUNT VI
## ASSAULT AND BATTERY
*(As to Defendant Michael Hill)*

83. Plaintiff, TIFFANY CHERIE BROWN, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty (40).

84. By the conduct described above, Defendant Michael Hill intentionally and unlawfully directed offensive physical touching toward Plaintiff and created a fear in Plaintiff of imminent peril. Said conduct was coupled with the apparent present ability to effectuate the threat.

85. The batteries were unwanted by Plaintiff and she did not consent to

Defendant Hill's actions.

86. As a direct result of the assaults and batteries perpetrated on Plaintiff, she suffered damages.

WHEREFORE, Plaintiff prays for judgment against Defendant, MICHAEL HILL, for the following damages:

    a. Mental pain;

    b. Severe emotional distress;

    c. Embarrassment;

    d. Humiliation;

    e. Mental anguish;

    f. Loss of the capacity for the enjoyment of life;

    g. Impairment of working ability;

    h. Loss of dignity;

    i. Loss of or diminution of earning or earning capacity.

## DEMAND FOR JURY TRIAL

87. Plaintiff, TIFFANY CHERIE BROWN, demands a trial by jury on all issues so triable.

**DATED** this 18th day of October 2021.

                                **FLORIN GRAY BOUZAS OWENS, LLC**

                                */s/ Gregory A. Owens*_____
                                **GREGORY A. OWENS, ESQUIRE**

Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*